Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,286-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AFFORDABLE CARE, LLC                    Plaintiffs-Appellants

versus

JEFFREY LEE MARTIN, DDS, A              Defendant-Appellee
PROFESSIONAL DENTAL
CORPORATION

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 627,387

Honorable Ramon Lafitte, Judge

* * * * *

PETTIETTE, ARMAND, DUNKELMAN,           Counsel for Appellants,
WOODLEY, BYRD & CROMWELL, L.L.P.        Affordable Care, LLC
By: Thomas A. Pressly, IV               and Thomas Kennedy DDS

LEWIS BRISBOIS BISGAARD
& SMITH, LLP
By: Nancy A. Cundiff
     Caroline J. Sanches

DOWNER, JONES, MARINO                   Counsel for Appellee
& WILHITE, L.L.C.
By: Michael A. Marino

* * * * *

Before MOORE, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Affordable Care, LLC, appeals a trial court judgment denying its petition for eviction and sustaining the peremptory exception of no right of action filed by defendant, Jeffrey Lee Martin, DDS. For the following reasons, we affirm.

## FACTS

Plaintiff, Affordable Care, LLC ("Affordable Care"), a North Carolina Corporation, provides management and dental laboratory services to dental practices nationwide. On August 5, 2002, Affordable Care leased commercial property on Ashley Ridge Boulevard in Shreveport, Louisiana, from SunDog, LLC, pursuant to a prime lease agreement.

On July 1, 2003, Affordable Care and defendant, Jeffrey Lee Martin, DDS ("Martin DDS"), entered into three agreements: (1) a Management Services Agreement ("MSA"), whereby Affordable Care would provide management services to Martin DDS; (2) a Dental Laboratory Services Agreement, pursuant to which Affordable Care would provide dental laboratory services to Martin DDS; and (3) a Sublease, by which Affordable Care would lease the premises, equipment, and fixtures to Martin DDS. The sublease provided, in pertinent part:

\*\*\*

2. <u>Term of Lease</u>. The term of this Lease shall commence on July 1, 2003, and shall continue for a period of one (1) year, unless and until earlier terminated. The term shall be renewed and extended automatically for successive one-year terms

provided that the Agreement to Provide Management Services to a Dental Practice between Landlord and Tenant (the "MSA") is in effect as of the last day of the current term. Tenant may terminate this Lease at any time, for any reason upon ninety (90) days written notice to Landlord. Otherwise, absent a default hereunder, neither Landlord nor Tenant may terminate

this Lease except in connection with the termination of the MSA. Termination of the MSA will result in automatic termination of this Lease[.]

***

17. <u>Option to Acquire Premises or Assume Prime Lease</u>. Tenant may, at its option, acquire and assume Landlord's interest in the Premises (including all equipment and fixtures) upon termination of the Lease, if all of the following conditions are fully satisfied.

(a) No less than sixty (60) days prior to the termination of the Lease, Tenant must deliver to Landlord written notice that Tenant desires to acquire Landlord's interest in the Premises (including all equipment and fixtures); provided, however, if Tenant does not have at least seventy (70) days advance knowledge of the Lease's imminent termination, then Tenant must deliver the above-mentioned notice to Landlord within ten (10) days of receipt of such knowledge.

(b) If Landlord does not own the Premises, fixtures, and/or equipment, but rather leases the Premises, fixtures, and/or equipment from one or more persons ("Prime Lessors"), then prior to termination of the Lease, the Tenant shall cause all Prime Lessors to execute such documents as deemed necessary or prudent by Landlord to (i) release Landlord from any obligation to the Prime Lessor from and following the termination of the Lease and (ii) permit assignment of Landlord's leasehold interest in the Premises, fixtures, and/or equipment to Tenant.

(c) Upon termination of the Lease, Tenant and Landlord must execute such documents as deemed necessary or prudent by Landlord to release each party from any obligation to the other party from and following the termination of the Lease.

(d) Upon termination of the Lease, Tenant must pay to Landlord, in cash or certified funds, the sum of the following: (i) the fair market value siting and development services related to the Premises provided by the Landlord that have not been paid by Tenant, which value is hereby agreed in good faith to be $50,000, plus (ii) the greater of the fair market value or book value of the Landlord's interest in the Premises (including fixtures) (but in no event greater than the acquisition costs), plus (iii) the greater of the fair market value or book value (but in no event greater than the acquisition costs) of the Landlord's interest in the equipment located at the Premises. An appraiser selected by Landlord shall determine fair market value, and Tenant shall reimburse Landlord for such appraiser's costs).

If all of the foregoing conditions are fully satisfied, then, upon termination of the Lease, Landlord shall convey Landlord's interest (whether leasehold or ownership) in the Premises and all equipment and fixtures to Tenant, and Landlord shall execute such documents deemed necessary or prudent by Landlord to perfect such conveyance. Such conveyance shall

2

be as-is, where-is, and free and clear of any mortgage previously granted by Landlord.

***

On August 31, 2020, Martin DDS notified Affordable Care of its intent to terminate the agreements and exercise its option to assume the prime lease under Section 17 of the sublease. Martin DDS requested the documents and information necessary to satisfy the requirements of Section 17 and inquired as to "any amounts [Affordable Care] believed Martin [DDS] owed as compensation for the value of Affordable [Care's] interest in the Premises." On October 20, 2020, Martin DDS notified Affordable Care it had purchased the premises and was now the owner and landlord under the prime lease.

Thereafter, Affordable Care sold its interest in the sublease, equipment, and fixtures to Thomas Kennedy, DDS of Louisiana II, a Professional Dental LLC ("Kennedy DDS") on October 26, 2020. In turn, Kennedy DDS leased the premises, equipment, and fixtures back to Affordable Care. Kennedy DDS, a competitor of Martin DDS, refused to allow Affordable Care to assign its leasehold interest in the fixtures and equipment to Martin DDS.[1]

On October 28, 2020, Affordable Care notified Martin DDS it had learned Martin DDS had incurably breached the MSA by disclosing "confidential information of Affordable Care" and had used the "confidential information" to obtain ownership in the premises. In the notice, Affordable Care stated, "We believe that the aforementioned conduct

_____

[1]The agreement between Affordable Care and Kennedy DDS was not introduced into evidence and is not a part of this record.

3

is not subject to cure and entitles Affordable Care to terminate the Services Contract for cause[.]"

However, Affordable Care did not respond to Martin DDS's request for documents necessary to exercise the option under Section 17. Therefore, in November 2020, Martin DDS sent Affordable Care a check in the amount of $50,000, in a "good faith effort to comply with [Section] 17(d)." Affordable Care held the check in trust but did not comply with the request for information pursuant to Section 17 of the sublease.

On November 19, 2020, Affordable Care provided Martin DDS with notice of the termination of the sublease and notice to vacate the premises. Affordable Care asserted the MSA had terminated due to the breach by Martin DDS, which resulted in the termination of the sublease. Affordable Care informed Martin DDS it was required to vacate the premises on or before 12:01 a.m. on November 29, 2020. Thereafter, on November 29, 2020, Counsel for Affordable Care sent a notice to Martin DDS's counsel, which stated in part:

***

The Cure Time set forth in the Declaration of Default and the [MSA] has expired. This letter confirms that Affordable has Cause to terminate the [MSA] under Section V(C)(2) of the [MSA], that Respondents were provided with the required period to cure Respondents' material breaches of the [MSA], and that Respondents elected not to cure, or even attempt to cure, Respondents' material breaches of the [MSA]. Accordingly, the [MSA] is terminated effective November 29, 2020 at 12:01 am., Shreveport, Louisiana time.

Due to the termination of the Services Contract, there is an "automatic termination" of the Lease between Affordable and the Practice. (Lease at ¶2). All of the conditions of Section 17 of the Lease have not been "fully satisfied" as of the termination of the Lease. (Lease at ¶17(d)). Accordingly, the Practice no longer has the right of possession of the [premises]. However, in order to avoid disruptions in patient care, Affordable will permit Respondents to continue operations at

4

the Premises until 12:01 a.m. on December 1, 2020, Shreveport, Louisiana time.

***

On November 30, 2020, Affordable Care learned Martin DDS had removed the original signage from the building and replaced it with a sign of a business named "Martin Dentures and Implants." Martin DDS had also placed a sign on the premises which read, "THIS LOCATION SOON TO BE MARTIN DENTURES AND IMPLANTS," and included the internet address for the new business.

On December 1, 2020, Affordable Care filed a Petition and Rule for Eviction, alleging, *inter alia*: Martin DDS has no legal right to remain on the premises because the sublease terminated and a notice to vacate had been provided; and no legal relationship existed between Affordable Care and "Martin Dentures and Implants," and "Martin Dentures and Implants" did not have a legal right to occupy the premises.[2]

Martin DDS answered the petition and generally denied the allegations set forth therein. Martin DDS also asserted an affirmative defense as follows: "[Martin DDS] has validly assumed the Prime Lease under Section 17 of the Sublease, and therefore, is the Prime Lease holder." Martin DDS requested the court to "assume judicial control of the lease to ensure there is no interruption in patient services."

On February 1, 2021, Martin DDS filed an exception of no right of action, arguing Affordable Care no longer had an interest in the premises, equipment, and fixtures, due to the assignment to Kennedy DDS. On

---

[2] A breach of contract dispute and claims pursuant to the MSA are currently pending in North Carolina. Only the eviction is at issue in this appeal.

February 2, 2021, Affordable Care filed a petition to amend the eviction proceeding to add Kennedy DDS as a plaintiff.

Following a hearing, the trial court granted the exception of no right of action as to Affordable Care. The court also denied Affordable Care's petition for eviction.

Affordable Care now appeals.

## DISCUSSION

Affordable Care contends the trial court erred in converting a summary proceeding into an ordinary proceeding by hearing arguments related to breach of contract. Affordable Care argues the trial court considered Section 17 of the lease agreement, interpreted the contract, and determined Affordable Care had not met the terms of the agreement. According to Affordable Care, the trial court's act of reviewing the contract and interpreting its meaning converted this action from a summary proceeding to an ordinary proceeding.

The provisions of La. C.C.P. arts. 4701, *et seq.*, provide a summary process for eviction of a lessee by a lessor because the lease had ended due to expiration of its term or for other lawful cause. *Monroe Hous. Auth. v. Coleman*, 46,307 (La. App. 2 Cir. 5/25/11), 70 So. 3d 871; *Williams v. Bass*, 37,156 (La. App. 2 Cir. 5/14/03), 847 So. 2d 80.[3] It is well settled that a summary action for eviction of a tenant or lessee under these articles

---

[3] La. C.C.P. art. 4702 provides:

> When an owner of immovable property wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased, the owner, or his agent, shall first cause a written notice to vacate the property to be delivered to the occupant.

> This notice shall allow the occupant five days from its delivery to vacate the premises.

involves the single issue of whether the lessor is entitled to receive back possession of the leased premises. *Id.*

In an eviction proceeding, the lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction. *Guste Homes Resident Mgmt. Corp. v. Thomas*, 12-1493 (La. App. 4 Cir. 5/29/13), 116 So. 3d 987. A lessee pleading an affirmative defense to eviction bears the burden of proof on that defense, which must be established by a preponderance of the evidence. *Guste Homes Resident Mgmt. Corp. v. Thomas*, 20-0110 (La. App. 4 Cir. 7/29/20), 302 So. 3d 1181; *Jeanmarie v. Peoples*, 09-1059 (La. App. 4 Cir. 3/16/10), 34 So. 3d 945.

Affordable Care correctly argues an eviction proceeding is a summary proceeding designed to determine whether the lessor has a right to be restored to the possession of the premises. Nevertheless, our law requires courts to give legal effect to all written contracts according to the parties' intent as determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. *Southern Treats, Inc. v. Titan Properties, L.L.C.*, 40,873 (La. App. 2 Cir. 4/19/06), 927 So. 2d 677, *writ denied*, 06-1170 (La. 9/15/06), 936 So. 2d 1271; *First South Farm Credit, ACA v. Gailliard Farms, Inc.*, 38,731 (La. App. 2 Cir. 8/18/04), 880 So. 2d 223.

Affordable Care claims entitlement to eviction pursuant to Section 2 of the sublease, while simultaneously arguing the trial court improperly considered Section 17 of the same agreement. We find the trial court was constrained to review the entirety of the lease to ascertain the rights of the parties. In doing so, the trial court did not convert this action from a

7

summary proceeding into an ordinary proceeding. The nature of the summary eviction proceeding was maintained, and the court correctly considered whether Affordable Care was entitled to a judgment of eviction under the terms of the sublease. Accordingly, this argument lacks merit.

Affordable Care also contends the trial court erred in sustaining the exception of no right of action raised by Martin DDS. Affordable Care argues it has a real, vested interest in the premises, equipment, and fixtures, pursuant to the prime lease and the assignment from Kennedy DDS. Affordable Care further maintains its assignee, Kennedy DDS, sought to be added as a plaintiff in these proceedings, which renders the exception of no right of action moot.

The function of an exception of no right of action is to determine whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La. C.C.P. art. 927; *Dering v. Dering*, 21-0691 (La. 10/1/21), 324 So. 3d 1042; *Turner v. Busby,* 03-3444 (La. 9/9/04), 883 So. 2d 412. When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit. *Howard v. Administrators of Tulane Educ. Fund*, 07-2224 (La. 7/1/08), 986 So. 2d 47. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation. *Dering, supra; Turner, supra.*

In the instant case, Martin DDS filed an exception of no right of action, arguing Affordable Care sold the equipment and fixtures located at

8

the premises and assigned its interest in the sublease to Kennedy DDS. Therefore, according to Martin DDS, Affordable Care no longer had the right to institute the eviction proceedings.

During the hearing on the exception of no right of action, the following colloquy took place:

| | |
|---|---|
| THE COURT: | Listen to me carefully. I want to make sure we stay on what I'm addressing, not any red herrings. Kennedy is the owner of the equipment and fixtures located at the premises and was the assignee of Affordable Care's interest in the sublease, meaning Kennedy stepped in as the landlord under the sublease; correct? |
| COUNSEL FOR AFFORDABLE CARE: | Correct. |
| THE COURT: | So, Kennedy is now the landlord and Martin is still the tenant; correct? |
| COUNSEL FOR AFFORDABLE CARE: | Correct. |
| THE COURT: | And I believe you argued at – both of you indicated that, correct me if I'm wrong, but Dr. Martin has purchased the building; correct? |
| COUNSEL FOR MARTIN DDS: | That's correct, Your Honor. |
| COUNSEL FOR AFFORDABLE CARE: | Yes, sir, subject to the prime lease. |
| THE COURT: | All right. So now he becomes the prime lessor. |
| COUNSEL FOR MARTIN DDS: | That's correct. |

\*\*\*

| | |
|---|---|
| THE COURT: | And if, of course, there is an assignment, there is a document where the sublease was assigned, then it would be Kennedy's action |

|                          | as opposed to Affordable. Do you agree with that? |
|--------------------------|---------------------------------------------------|
| COUNSEL FOR AFFORDABLE CARE: | I would agree with that yes, Kennedy is the sublease. |
| THE COURT:               | The landlord in the sublease.                     |

*** 

Affordable Care admits Kennedy DDS is the owner of the equipment and fixtures. However, according to Affordable Care, it now leases the equipment and fixtures from Kennedy DDS, and therefore, Affordable Care has a real and actual interest in this matter because its "peaceful possession of the equipment and fixtures has been disturbed by Martin DDS's refusal to vacate the Premises."

The law is well-settled. Eviction is a proper remedy for use by a lessor, who wishes to obtain possession of the premises when the lessee's right to occupancy has ceased. La. C.C.P. art. 4701. Affordable Care continues to have an interest in the property as the tenant/lessee of prime lease. However, the eviction action was not brought by Affordable Care to assert any rights as the tenant under the *prime lease*. Affordable Care alleged it was entitled to eviction as the landlord/lessor under the *sublease* because termination of the MSA resulted in termination of the *sublease*. Counsel for Affordable Care conceded Kennedy DDS, not Affordable Care, is the current lessor under the sublease. The exception of no right of action was sustained only as to Affordable Care, and did not include Kennedy DDS, the added plaintiff. Therefore, we find the trial court did not err in sustaining the exception of no right of action as it pertains to Affordable Care. This assignment lacks merit.

Affordable Care further contends the trial court erred in denying the petition for eviction. Affordable Care argues pursuant to the language of Section 2 of the sublease, Martin DDS's sublease was terminated upon the termination of the MSA. Affordable Care also argues it leased the equipment and fixtures from Kennedy DDS, and as the sole lessee, it has a right to peaceful possession thereof. Conversely, Martin DDS maintains it timely notified Affordable Care of its intent to exercise its option under Section 17 of the sublease. Therefore, according to Martin DDS, the trial court did not manifestly err in denying Affordable Care's petition for eviction.

Generally, an appellate court reviews the factual findings in an eviction matter under the manifest error standard of review. *Fort Miro Subdivison P'ship v. Gix*, 53,591 (La. App. 2 Cir. 4/14/21), 316 So. 3d 185; *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 15-0375 (La. App. 4 Cir. 10/28/15), 178 So. 3d 1094; *Housing Auth. of New Orleans v. Haynes*, 14-1349 (La. App. 4 Cir. 5/13/15), 172 So. 3d 91. However, a question of contractual interpretation, presented in an eviction case, is subject to *de novo* review on appeal. *Armstrong Airport Concessions*, *supra*. Further, when there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*. *Id.* Moreover, the issue of whether or not the language of a contract is ambiguous is an issue of law subject to *de novo* review on appeal. *French Quarter Realty v. Gambel*, 05-0933 (La. App. 4 Cir. 12/28/05), 921 So. 2d 1025.

Under the manifest error standard, the reviewing court does not determine whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. *Stobart v. State, through Dept. of Transp.*

11

*and Dev.,* 617 So. 2d 880 (La. 1993). Findings based on credibility determinations are entitled to great deference. *Foley v. Entergy Louisiana, Inc.,* 06-0983 (La. 11/29/06), 946 So. 2d 144. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. *Stobart, supra; Rosell v. ESCO,* 549 So. 2d 840 (La. 1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Davidson v. Glenwood Resolution Auth., Inc.,* 47,640 (La. App. 2 Cir. 1/23/13), 108 So. 3d 345; *Brown Radiator & Frame v. Kidd,* 44,354 (La. App. 2 Cir. 6/24/09), 13 So. 3d 1244.

In the instant case, in an effort to determine whether Affordable Care and/or Kennedy DDS were entitled to a judgment of eviction, the following exchange occurred:

THE COURT:        When Affordable Care was the landlord, they were not the owner of the fixtures. Right? Nor the premises. Right?

COUNSEL FOR
AFFORDABLE
CARE:             Correct.

THE COURT:        So, Affordable Care had to tell Dr. Martin what was necessary and prudent for them to be released from the prime lease as well as released from the fixtures and the equipment. Right? And I – just tell me, am I right?

COUNSEL FOR
AFFORDABLE
CARE:             As the landlord.

THE COURT:        As the landlord, Affordable Care had to do that upon their request, and [Martin DDS]

made the request, Affordable Care didn't do it. Right?

COUNSEL FOR AFFORDABLE CARE:    Correct.

***

THE COURT:    We're just dealing with Affordable Care. They are the landlord. We are before October. Let me see Exhibit 1. You're not going to confuse me. I'm going to keep hammering at the question until I get an answer. As of August 31st, Affordable Care was the landlord; correct?

COUNSEL FOR AFFORDABLE CARE:    Yes, sir.

THE COURT:    Dr. Martin sent Affordable Care the letter in August indicating they wanted to exercise their option. Right?

COUNSEL FOR AFFORDABLE CARE:    Yes, sir.

THE COURT:    Which at that time, Affordable Care had to provide him what they deemed necessary or prudent so that Affordable Care could be released from the prime lease as well as any obligations under the fixtures and/or equipment; correct?

COUNSEL FOR AFFORDABLE CARE:    Correct.

THE COURT:    They didn't do it. Right? For whatever reason, they didn't do it?

COUNSEL FOR AFFORDABLE CARE:    Right.

***

THE COURT:    I don't know what [the drafter of the sublease's] intent was, but I know what I read, and it does not give Affordable the option, it gives [Martin DDS] the option, and Affordable has not followed up on paragraph 17, plain and simple. I am not

13

going to evict [Martin DDS] until they follow up on what they're supposed to do, and if after they do what – Kennedy does what he is supposed to do, if [Martin DDS] don't [sic] follow up with whatever is left for him to do under 17, he's out, but until then, he remains in. The option is not given to Kennedy. Kennedy is now the landlord. He does not have the option to say, I don't want to give you the fixtures. He has to tell [Martin DDS] what he deems necessary or prudent to permit the assignment of Kennedy's leasehold interest in the premises, fixtures and/or equipment to [Martin DDS]. That's what he has to do. It does not say at his option, and that is my ruling.

He is not going to be evicted until Kennedy follows up on paragraph 17, and if [Martin DDS] then drops the ball, he's out, but until then, he has done nothing, under this agreement, he has – actually, he has followed everything under A., B., C., and D. Your client, Kennedy, is the landlord. He has an obligation, he hasn't done what he's required to do, and until then, I'm not going to kick [Martin DDS] out.

***

We agree. Pursuant to the express language of Section 17 of the sublease, Martin DDS had the option to "acquire and assume [Affordable Care's] interest in the Premises (including all equipment and fixtures) upon termination of the Lease." The record reveals Martin DDS notified Affordable Care of its intent to exercise its option. Rather than complying with the terms of the sublease and submitting to Martin DDS "such documents as deemed necessary or prudent," Affordable Care circumvented its obligation by selling its interest in the sublease to Kennedy DDS, along with all equipment and fixtures located in the premises. Thereafter, Affordable Care deemed Martin DDS in breach of the MSA and declared the sublease terminated (due to the alleged termination of the MSA). Under the

14

facts of this case, we find the trial court did not err in denying the petition for eviction.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is hereby affirmed. Costs of this appeal are assessed to the appellant, Affordable Care, LLC.

**AFFIRMED.**